```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
UNITED STATES OF AMERICA,                                          :
                                                                   :
                                                                   :
             -v-                                                   :    22 Cr. 108 (JPC)
                                                                   :
ANTHONY CRACCHIOLO,                                                :    OPINION AND ORDER
                                                                   :
                    Defendant.                                     :
                                                                   :
-------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

On August 16, 2023, the Court sentenced Anthony Cracchiolo to sixty months in prison for conspiracy to commit healthcare fraud and possession of a firearm after a felony conviction. Cracchiolo's current projected release date is April 7, 2027, although assuming his receipt of credits and early release consideration under the First Step Act and the Second Chance Act and for good conduct, Cracchiolo may transition to community confinement as early as September 19, 2025—in about two months. Cracchiolo now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), representing that he is the lone potential caregiver for his ailing father, who suffers from end stage pulmonary fibrosis and is oxygen dependent, and for his mother, who has a history of cancer, high blood pressure, diabetes, lupus, chronic lower back pain, and a mass in her kidneys.

While the Court agrees that Cracchiolo's father's medical condition presents an extraordinary and compelling reason for purposes of Section 3582(c)(1)(A)(i), a reduction is nonetheless not warranted upon consideration of the relevant factors under 18 U.S.C. § 3553(a). Cracchiolo's motion is therefore denied.

## I. Background

Cracchiolo was convicted in this case of committing two distinct and serious offenses. First, from approximately July 2019 to October 2020, Cracchiolo, his co-defendant Zachary Seid, and others participated in a sophisticated health care fraud scheme that involved bogus prescriptions for durable medical equipment ("DME") and at least $12 million in fraudulent Medicare billing. Dkt. 63 ("PSR") ¶ 19.[1] Cracchiolo and Seid unlawfully purchased fraudulent DME prescriptions, a substantial portion of which contained forged signatures or purported approvals of physicians and other health care providers whose names and professional identifying information were used without their authorization and prior knowledge. *Id.* ¶¶ 24, 26. The scheme had two phases. In the first phase, Cracchiolo and Seid sold those fraudulently obtained prescriptions to DME supply companies, which then used the prescriptions to submit fraudulent claims to Medicare. *Id.* ¶¶ 25, 28-34. In total, Cracchiolo and Seid received at least $590,000 from DME supply companies that trafficked in DME prescriptions. *Id.* ¶ 25. The second phase started around May 2020, when Cracchiolo and Seid acquired five DME supply companies. *Id.* ¶ 35. Cracchiolo and Seid used these companies to fraudulently bill Medicare based on illegally obtained DME prescriptions. *Id.* ¶¶ 39-40. Cracchiolo and Seid's five DME supply companies billed Medicare for over $11 million, with Medicare paying almost $5.6 million on those fraudulent claims. *Id.* ¶¶ 40-41.

In addition to orchestrating this massive health care fraud, Cracchiolo, who previously was convicted of a felony narcotics offense in the Eastern District of New York, unlawfully possessed a Palmetto State Armory PA-15 firearm with a thirty-round magazine. *Id.* ¶¶ 44-45. Cracchiolo

---

[1] DME includes prosthetics, orthotics, and supplies such as off-the-shelf braces for ankles, knees, backs, elbows, wrists, and hands. PSR ¶ 14.

obtained this firearm because he was embroiled in a dispute with another individual also involved in trafficking prescriptions. *Id.* ¶ 45.

On March 15, 2023, Cracchiolo pleaded guilty pursuant to a plea agreement with the Government to conspiracy to commit healthcare fraud, in violation of 18 U.S.C. § 1349, and knowingly possessing a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1). *See* Dkt. 53 (superseding information); Dkt. 58 (guilty plea transcript); March 15, 2023 Minute Entry.  Cracchiolo's offense conduct and criminal history yielded an advisory sentencing range under the United States Sentencing Guidelines of 87 to 108 months' imprisonment. PSR ¶¶ 7, 53-81, 137; Dkt. 76 ("Sent. Tr.") at 9:6-11:7.  On August 16, 2023, the Court sentenced Cracchiolo to a below-Guidelines term of sixty months' imprisonment, to be followed by three years of supervised release.  Sent. Tr. at 27:17-23.  In arriving at that sentence, the Court considered the seriousness of Cracchiolo's offenses, *id.* at 22:4-25:1, and the need for individual and general deterrence, *id.* at 25:2-20, as well as mitigating factors in his favor including Cracchiolo's role as "a primary caretaker for his parents who have been dealing with various medical conditions," *id.* at 26:22-24.  The Court also imposed restitution in the amount of $5,596,968, *id.* at 29:19-32:11; Dkt. 72 (order of restitution), and ordered Cracchiolo to forfeit $2,399,817 representing proceeds traceable to the commission of the health care fraud offense, his interest in certain property in Parkland, Florida, and the firearm and ammunition he illegally possessed, Sent. Tr. at 32:12-33:4; Dkt. 55 (preliminary order of forfeiture); Dkt. 73 ("Judgment") at 8; Dkt. 90 (final order of forfeiture as to net proceeds of the sale of the Parkland property).

Cracchiolo began serving his term of incarceration on October 16, 2023.  Dkt. 100 ("Motion"), Exh. F; *see* Judgment at 2.  He currently is incarcerated at the Federal Correctional Institution Miami in Miami, Florida, and, according to the Bureau of Prisons ("BOP"), has a

projected release date of April 7, 2027. *See* Federal Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited July 18, 2025). Cracchiolo attaches to his motion a copy of the BOP's First Step Act Time Credit Assessment, as of November 3, 2024, which reflects that he may transition to community confinement as early as September 19, 2025. Motion, Exh. F.

On March 28, 2024, Cracchiolo filed an administrative request for compassionate release with the BOP, citing his parents' need for a caretaker as an extraordinary and compelling circumstance warranting early release. Motion, Exh. A. The BOP denied that request on May 10, 2024, determining that Cracchiolo did not satisfy the criteria for compassionate release. *Id*. So on January 9, 2025, Cracchiolo moved in this Court for compassionate release under 18 U.S.C. § 3582(c)(1)(A), again citing his need to serve as a caretaker for his parents. Dkt. 100. The Government opposed Cracchiolo's motion on January 25, 2025, Dkt. 102 ("Opposition"), and Cracchiolo filed a reply brief the following week, Dkt. 103.

## II. Legal Standard

Section 3582(c)(1)(A) "permits a defendant to move for a reduction in sentence, up to and including release from prison, in federal district court." *United States v. Jones*, 17 F.4th 371, 373-74 (2d Cir. 2021) (citing 18 U.S.C. § 3582(c)(1)(A)). The statute provides, in relevant part, that the court "may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . (i) extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The party moving for a sentence reduction pursuant to Section 3582(c)(1)(A) "has the burden of showing that the circumstances warrant that decrease." *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992); *see United States v. Sellick*, No. 21-2328, 2022 WL 16936829, at *1

4

(2d Cir. Nov. 15, 2022) (summary order) ("The defendant bears the burden of showing that the circumstances warrant a sentence reduction."). Thus, as the moving party, Cracchiolo must show that: (1) he exhausted his administrative remedies;[2] (2) extraordinary and compelling reasons warrant reduction of his sentence; and (3) the sentencing factors set forth in 18 U.S.C. § 3553(a), on balance, do not cut against such reduction. *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021).

### III.  Discussion

#### A.  Extraordinary and Compelling Reasons

Cracchiolo argues that extraordinary and compelling reasons support granting him compassionate release because he is "the only available caregiver for his parents who are both now incapacitated." Motion at 1. The Court agrees that he has satisfied this part of the analysis.

Federal law directs the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under Section 3582(c)(1)(A)], including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission's policy statement in Section 1B1.13 provides that guidance.[3] As relevant here, "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" qualifies as an extraordinary and compelling reason for reducing the defendant's sentence. U.S.S.G. § 1B1.13(b)(3)(C).[4] When a defendant relies on Section

---

[2] Cracchiolo has submitted evidence that he exhausted the BOP's administrative remedies, Motion, Exh. A, and the Government does not dispute exhaustion, *see* Opposition at 6 n.2.

[3] As of November 1, 2023, Section 1B1.13 expressly applies to motions for compassionate release brought by defendants, as opposed to only motions by the BOP. *United States v. Rodriguez*, No. 22 Cr. 648 (JGK), 2025 WL 1002192, at *2 (S.D.N.Y. Mar. 31, 2025); *see* U.S.S.G. § 1B1.13(a) ("Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." (emphasis added)).

[4] Section 1B1.13 also requires for a reduction of sentence, *inter alia*, that "[t]he defendant is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. §

1B1.13(b)(3)(C)'s sole-caregiver provision, however, "courts generally require a showing of evidence from several sources indicating that the defendant is the only available caregiver for a family member in dire conditions, before concluding that an extraordinary and compelling reason has been established." *United States v. Lindsey*, No. 13 Cr. 271 (LTS), 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) (internal quotation marks omitted).

Here, Cracchiolo relies on letters from his mother, Teresa Cracchiolo ("Teresa"), and his parents' physician, Dr. Nevine M. Carp, who explain that Cracchiolo's parents are both in very poor health. *See* Motion, Exh. G ("Carp Letter"); Reply at 5 ("Teresa Letter"). Dr. Carp states that Cracchiolo's father, Giuseppe Cracchiolo ("Giuseppe"), suffers from end stage pulmonary fibrosis, leaving him oxygen dependent. Carp Letter at 1. That condition, Dr. Carp explains, "requires close monitoring and consistent care, including help with his activities of daily living." *Id.* Dr. Carp also contends that Cracchiolo's parents "cannot afford to hire outside help." *Id.* Teresa similarly represents that she and her husband cannot afford to hire a live-in aide. Teresa Letter at 1.

The Government does not dispute that Giuseppe is incapacitated within the meaning of Section 1B1.13(b)(3)(C) or that his son would be available to care for him, if released. *See* Opposition at 6. Instead, the Government contends that Cracchiolo's "mother and . . . sister are still available to serve as the father's caregivers." *Id.*

Yet, as the Government acknowledges, Teresa can only take care of her husband "under increasingly difficult circumstances." *Id.* Indeed, Dr. Carp reports that Teresa "is in very poor health herself," suffering from a mass in her kidney and various comorbidities, including high

---

3142(g)." U.S.S.G. § 1B1.13(a)(2). The Government has not argued that compassionate release is unavailable pursuant to this prong. *See generally* Opposition.

6

blood pressure, diabetes, and lupus. Carp Letter at 1. Dr. Carp explains that "[p]eople with lupus have confusion, loss of ability of coordination, difficulty planning, loss of concentration and memory loss." *Id.* And according to Dr. Carp, Teresa also "suffers from crippling chronic lower back pain." *Id.* Those medical issues, Dr. Carp explains, render Teresa "unable to properly care for herself," let alone "be the 24/7 caregiver that her husband, Giuseppe, desperately needs." *Id.* Teresa similarly contends that her "own health has worsened," such that she is unable to care for herself. Teresa Letter at 1.

Cracchiolo's sister, meanwhile, lives in Boca Raton, Florida, where she struggles to make ends meet as a recently divorced mother of three working two jobs. *Id.*; Motion at 5. And even if Cracchiolo's sister were geographically and financially capable of handling the around-the-clock care that Giuseppe needs, Teresa contends that her daughter has "cut off all contact with [them] for months now" and is "unwilling to help [them]." Teresa Letter at 1; *see* Motion at 5 (arguing that Cracchiolo's sister "is simply unable and unavailable to be the 24/7 caregiver that [their] parents now require"). These representations, which the Government (perhaps understandably) has not disputed, lead the Court to conclude that Cracchiolo has established that neither his mother nor his sister is available to serve as a caretaker. *See United States v. Garcia*, No. 01 Cr. 1110 (LAP), 2025 WL 1004409, at *5 (S.D.N.Y. Apr. 3, 2025) (holding that the defendant was the only available caregiver to her son where the defendant's brothers were "unable to care for him[] due to their own life responsibilities"). Thus, based on the information provided, the Court concludes that Giuseppe's dire health situation, including the absence of any viable caregiver within the family or ability to afford outside care, qualifies as an extraordinary and compelling reason for reducing Cracchiolo's sentence.

B. **Section 3553(a) Sentencing Considerations**

The analysis, however, does not end there. Even if an incarcerated defendant has established extraordinary and compelling reasons justifying early release, Section 3582(c)(1)(A) allows for compassionate release only "after considering the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A); *United States v. Raposo*, No. 98 Cr. 185 (JPC), 2024 WL 165195, at *9 (S.D.N.Y. Jan. 16, 2024) (explaining that after a movant establishes an extraordinary and compelling reason meriting release, the court considers the Section 3553(a) factors). These factors include, among others, "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and the need "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).

Beginning with the nature and circumstances of the offense, *id.* § 3553(a)(1), as well as the need for the sentence to reflect the seriousness of the offense and provide just punishment, *id.* § 3553(a)(2)(A), Cracchiolo's conduct was very serious. As discussed, Cracchiolo, along with Seid and others, engaged in a large and sophisticated fraud targeting a national program that millions of Americans rely on. Not only did Cracchiolo unlawfully enrich himself by receiving payments from DME suppliers for the fraudulent prescriptions and by receiving the fraudulent Medicare payments, but he also harmed the Medicare system and potentially prevented beneficiaries from receiving the coverage for DME equipment they genuinely needed. In total, the scheme resulted in at least $12 million of fraudulent Medicare billing, PSR ¶ 19, with Cracchiolo responsible for a loss amount of over $11 million, *id.* ¶ 43. In addition, Cracchiolo obtained a semiautomatic firearm, knowing full well that, after his prior narcotics conviction, he could not lawfully possess that weapon. This firearms offense independently demands appropriate

8

punishment. A reduction of Cracchiolo's sentence at this relatively early stage of his term would fail to adequately reflect the very serious nature of these two crimes.

The requested reduction also would not afford "adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B), or "protect the public from further crimes" of Cracchiolo, *id.* § 3553(a)(2)(C). Prior to the two crimes in this case, Cracchiolo committed several other offenses. In September 2008, he was convicted in Florida for violating a domestic violence injunction under circumstances that involved dangerous conduct by Cracchiolo toward his ex-girlfriend. PSR ¶ 77. Then, in May 2012, Cracchiolo was arrested for driving with a blood alcohol content of .12% after speeding and swerving on the Long Island Expressway. *Id.* ¶ 78. That arrest resulted in a conviction for reckless endangerment in the second degree and a sentence of three years' probation, along with other conditions that included installation of an ignition interlock device for three years, a six-month license revocation, and a $500 fine. *Id.* Cracchiolo was then arrested on October 18, 2012 in Staten Island on federal drug distribution charges after he sold cocaine and marijuana to individuals working with law enforcement. *Id.* ¶ 79. Cracchiolo pleaded guilty in the Eastern District of New York to a narcotics distribution conspiracy which held him responsible for distributing 82.6 grams of cocaine and 427.6 grams of marijuana and, on October 16, 2013, he was sentenced to six months' imprisonment followed by three years of supervised release. *Id.*

Cracchiolo's conduct in this case entailed ongoing and deliberate decisions to violate the law, reinforcing the importance of specific deterrence. He committed two distinct crimes, the health care fraud conspiracy and the illegal possession of a firearm. The health care fraud conspiracy spanned about 17 months and entailed repeated acts in furtherance of the scheme, including multiple purchases of fraudulent DME prescriptions, sales of those prescriptions to DME

9

providers, the creation of five DME supply companies, and repeated fraudulent billing of Medicare. This conduct hardly can be dismissed as an isolated poor decision.

Both crimes also call strongly for general deterrence. Health care fraud causes massive financial loss to the federal government, diverts funds away from those who vitally need health services, victimizes taxpayers, and triggers higher health care costs. It is essential that would-be health care fraudsters appreciate that, if they choose to engage in such fraud, they may face serious consequences. Firearms offenses likewise demand general deterrence in society. The illegal possession of guns endangers members of society, and it is important that people realize that such conduct, too, will be met with significant punishment.

To be sure, certain Section 3553(a) factors do weigh in Cracchiolo's favor. To begin, the Government does not dispute that, to date, Cracchiolo has been a model inmate without any disciplinary infractions. *See* Motion at 2. While incarcerated, Cracchiolo has participated in programs geared to facilitate his return to society, reflecting a desire to get his life back on track upon his release from custody. He has received a high school equivalency diploma while incarcerated, Motion, Exh. C, as well as certificates for completing a drug abuse education course, boot camp training, a family parenting series, and a national parenting program, Motion, Exh. D. And according to the BOP's First Step Act Recidivism Risk Assessment, the BOP assesses Cracchiolo to present a low risk of recidivism. Motion, Exh. E.

The Court, however, considered mitigating factors in imposing a below-guidelines sentence, including some of the Section 3553(a)-related arguments Cracchiolo now presents. Most relevant for the purposes of the instant motion, while Cracchiolo's father's condition certainly appears to have worsened since Cracchiolo was sentenced, the Court took into account that Cracchiolo "is a primary caregiver for his parents who have been dealing with various medical

10

conditions." Sent. Tr. at 26:22-24. At sentencing, the Court also noted letters that depicted Cracchiolo as a "loving son and father," *id.* at 26:21-22, and observed that Cracchiolo himself suffers from a health condition that requires proper medical treatment, *id.* at 26:24-27:1. The Court also acknowledged that Cracchiolo confessed to law enforcement shortly after his arrest, waived his right to indictment, waived venue for the gun charge, and paid approximately $840,000 toward his forfeiture obligation from the sale of his home. *Id.* at 27:2-9. The Court explained that these acts reflected "a degree of acceptance [of responsibility] that is considerably more significant than in the typical case where a defendant pleads guilty." *Id.* at 27:12-14.

In the end, however, the Court concludes that compassionate release at this stage is not warranted. *See United States v. Lisi*, 440 F. Supp. 3d 246, 250-53 (S.D.N.Y. 2020) (denying compassionate release, despite finding that the defendant had established extraordinary and compelling reasons for a reduction based on his mother's health condition, after considering the applicable factors under Section 3553(a)). Cracchiolo essentially asks this Court to reduce a 60-month sentence, which itself was a significantly below his advisory Guidelines range because of the various mitigating circumstances considered and whose custodial period may otherwise be substantially reduced under the First Step Act and the Second Chance Act, to roughly a 21-month term of incarceration as of this date. Granting such a significant sentence reduction would fail to reflect the seriousness of Cracchiolo's two offenses, including the harm caused by his health care fraud, and would not achieve specific and general deterrence for the conduct. Thus, the applicable Section 3553(a) factors compel the conclusion that a reduction of the imposed sentence is not warranted.

### IV.  Conclusion

For these reasons, Cracchiolo's motion for compassionate release is denied.  The Clerk of Court is respectfully directed to close Docket Number 100.

SO ORDERED.

Dated: July 18, 2025
       New York, New York

                                                  JOHN P. CRONAN
                                          United States District Judge